## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

In re:                                             Case No: 20-10917-RAM
                                                   Chapter 15
BANCO CONTINENTAL, S.A.,

                        Debtor
_____/

### ANTONIO CABALLERO'S MOTION TO TRANSFER VENUE

Party in interest, Antonio Caballero ("Caballero"), by and through undersigned counsel,

hereby submits this Motion to Transfer Venue (the "Motion") pursuant to 28 U.S.C. § 1412 and

Fed.R.Bank.P. 1014(a)(2), and in support thereof, states the following:

### INTRODUCTION

Courts routinely reject blatant forum shopping, and this Court should do so here.  In this

terror victim collection action, Caballero is the only party to have properly attached assets

undisputedly located in South Dakota.  Indeed, there are two federal court actions in South Dakota[1]

(near completion) with a combined 134 docket entries.  The debtor, Banco Continental S.A. a/k/a

Banco Continental S.A., Honduras a/k/a Banco Honduras, S.A. ("Banco Continental"), has been

participating in the South Dakota actions for over a year – seeking intervention, but now

inappropriately seeks to shift the venue for the intervention decision pending before the South

Dakota District Court to this Court.  Also pending before the South Dakota District Court is the

dispositive issue of whether Bantrab has any whatsoever interest in the assets located in South

Dakota (and it does not).  Despite such dispositive issue being fully briefed before the South

---

[1] Both actions are before the district court of South Dakota (the "South Dakota District Court").  These actions include *Caballero v. FARC et. al.*, Case No. 4:19-cv-04011-KES (D.S.D. 2019) (the "Garnishment Action") and *Wells Fargo Bank, N.A. v. Antonio Caballero et al.* Case No: 4:19-CV-04141-KES (D.S.D. 2019) (the "Interpleader Action").

Dakota District Court, Bantrab seeks to inappropriately move the forum for such decision to this Court.[2]

The Southern District of Florida is not the proper venue for this chapter 15 bankruptcy action. Neither Banco Continental, nor its fiduciary liquidator, Banco de los Trabajadores ("Bantrab"), reside in this judicial district. Moreover, the principal assets in the putative name of Banco Continental lie outside this judicial district and in the district of South Dakota. As such, the Court should transfer this bankruptcy action to the South Dakota District Court, the proper venue for this action.

Regardless of whether this Court concludes that the Southern District of Florida is a proper venue, the Court should still transfer this action to the South Dakota District Court, where two dispositive actions are currently pending (and near completion). First, case law establishes that when there exist multiple actions with significant overlap, there is a strong presumption that the first-filed forum should hear the actions. And because Bantrab fails to establish compelling circumstances to displace this presumption, transfer is warranted. Second, Bantrab is forum shopping and attempting to circumvent the two dispositive actions currently pending (and near completion) in the South Dakota District Court. Bantrab simply dislikes the rulings from the South Dakota District Court and would like to avoid that Court's further rulings. Bantrab in essence seeks to obtain broad pronouncements from this Court in order to attempt to circumvent the South Dakota District Court and established OFAC law that it simply has no interest in the assets at issue in South Dakota. And, third, the preponderance of the evidence demonstrates that transfer would

---

[2] Because the South Dakota District Court is already conducting the dispositive proceedings, the prospect of Bantrab appealing to a district court other than the South Dakota District Court poses numerous, unnecessary procedural complications and potentially varying court rulings that would otherwise not occur when the South Dakota District Court would already have the dispositive proceedings before it. Thus, it would also be more efficient for the South Dakota District Court, already hearing the dispositive motions, to be the appellate court for any bankruptcy action Bantrab would attempt to bring. Transfer is therefore warranted.

be in the interest of justice.   Thus, Caballero respectfully requests that this Court grant its Motion to transfer this action to the South Dakota District Court.

## BACKGROUND

On November 18, 2014 Caballero obtained a Final Judgment against FARC, NDVC, and ELN[3] in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, captioned *Antonio Caballero v. Revolutionary Armed Forces of Colombia, Case No. 12-48803-CA-02* (the "Final Judgment").  Since obtaining his Final Judgment, Caballero has initiated various garnishment actions to execute against assets in the name of Defendants and/or in the putative name of Defendants' agents and instrumentalities.

More than a year ago, Caballero initiated one such garnishment action against blocked assets held in the putative name of Banco Continental—a Specially Designated Narcotics Trafficking Kingpin ("SNDTK") and an agency and instrumentality of FARC—in the Second Judicial Circuit, Minnehaha County Circuit Court, South Dakota (the "South Dakota State Court").[4]

---

[3] "FARC," "NDVC," and "ELN" stand for Fuerzas Armadas Revolucionarias de Colombia, Ejercito de Liberacion, and the Norte de Valle Cartel, respectively.

[4] On October 7, 2015, the U.S. Department of Treasury published on its website that OFAC had designated Banco Continental a SDNTK: "Today's announcement marks the first time that OFAC has designated a bank pursuant to the Kingpin Act.  Banco Continental S.A. has served as an integral part of the Rosenthal money laundering operations and facilitated the laundering of narcotics proceeds for multiple Central American drug trafficking organizations." D.E. 13 at 17-18.  Since Banco Continental's designation, multiple courts have determined that Banco Continental is agency and instrumentality of FARC.  *See e.g.* South Dakota State Court Order, Garnishment Action, D.E. 15-10 [attached hereto as **Exhibit A**]; South Dakota District Court Order, Garnishment Action, D.E. 23 at 13 [attached hereto as **Exhibit B**] (giving full faith and credit to the agency and instrumentality determination of the South Dakota State Court); Order entered by the Fourth Judicial District, Hennepin County District Court, Minnesota (the "Minnesota State Court"), Garnishment Action, D.E. 59-1 [attached hereto as **Exhibit C**]; *see also* District Court for the District of Columbia Memorandum Opinion, *Stansell, et al. v. Pineda, et al.,* Case No. 1:10-mc-00471-TJK (D.D.C. 2010), D.E. 32 at 8-11 [attached hereto as **Exhibit D**].  Indeed, courts and experts and have conclusively found the assets in the putative name of Banco Continental to be ***owned by the FARC***.  *See e.g.* Sworn Declaration of Dr. Bruce Bagley Regarding Banco Continental (the "Dr. Bagley Declaration"), Garnishment Action, D.E. 15-9 at 34, ¶ 26 [attached hereto as **Exhibit E**]; South Dakota State Court Order, Garnishment Action, D.E. 15-10 [attached hereto as **Exhibit A**]; South Dakota District Court Order, Garnishment Action, D.E. 23 at 13 [attached hereto as **Exhibit B**]; Minnesota State Court Order, Garnishment Action, D.E. 59-1 [attached hereto as **Exhibit C**]; Sworn Declaration of John Robert McBrien Regarding Banco Continental, S.A., Interpleader Action, D.E. 71-1 at ¶ 10 [attached hereto as **Exhibit F**].  As a result, ***Banco Continental does not actually own*** any of the assets in its putative name located in the United

*See* Summons for Garnishment and Admission of Service, Garnishment Action, D.E. 1-4 and 1-5, respectively [attached hereto as **Exhibit G**].  Caballero filed his Garnishment Action in South Dakota because Wells Fargo represented that the assets in the putative name of Banco Continental were located in South Dakota.  Wells Fargo has confirmed through court filings (discussed *infra*) that the blocked assets are indeed located in South Dakota ***not*** in Florida as Bantrab represents to this Court.

This garnishment action was subsequently removed to the South Dakota District Court.  Approximately eight months after service of the Summons for Garnishment upon Garnishee, Wells Fargo Bank, N.A. ("Wells Fargo"), when the Garnishment Action was all but concluded (save an order for turnover), Wells Fargo initiated an interpleader action.  Therein, Wells Fargo named all alleged interested parties in the assets held by Wells Fargo in South Dakota in the putative name of Banco Continental (the "South Dakota Blocked Funds") as defendants.  The Interpleader Action was assigned to the very same judge presiding over the Garnishment Action.

In October 2019, Bantrab moved to intervene in the Interpleader Action on the basis that it is the fiduciary liquidator of Banco Continental and that Banco Continental's assets had been transferred to it pursuant to Honduran law.  Caballero subsequently filed its opposition to Bantrab's intervention, arguing, in part,[5] that Bantrab has no legally cognizable interest in the South Dakota Blocked Funds because Bantrab lacks any Office of Foreign Assets Control (the "OFAC")

States or elsewhere.  In his opposition papers to Banco Continental's Motion for Recognition of Foreign Main Proceeding, which will be filed shortly, Caballero more fully explains that because Banco Continental has no legally cognizable interest in the U.S. assets in its putative name, so too does Bantrab lack a legally cognizable interest in the U.S. assets in the putative name of Banco Continental.  Furthermore, given Banco Continental's lack of any legally cognizable interest in the U.S. assets in its putative name, Bantrab lacked any basis for filing this chapter 15 petition on behalf of Banco Continental.  Thus, this action should be dismissed in its entirety.

[5] Caballero's arguments opposing Bantrab's intervention and claim to the South Dakota Blocked Funds can be found in various filings. *See e.g.* Opp. to Mot. to Intervene, Interpleader Action and Garnishment Action, respectively, D.E. 43 at 4-5, 9-19 [attached hereto as **Exhibit H**] and D.E. 55 [attached hereto as **Exhibit I**]; Opp. to Status Conference, Interpleader Action, D.E. 64 at ¶¶ 6-10 [attached hereto as **Exhibit J**].

license.[6]  Caballero further noted that Honduran law cannot be used to override OFAC's explicit determinations that the South Dakota Blocked Funds remain blocked. *See* OFAC licenses, D.E. 13 at 104-112 (allowing transactions related to the liquidation and wind down of Banco Continental but specifically not authorizing: (i) the "***unblocking of any property blocked*** pursuant to the Foreign Narcotics Kingpin Sanctions Regulations, 31 CFR part 598;" (ii) any transactions "otherwise ***prohibited by any Executive order or any other part of 31 C.F.R Chapter V" or any dealings with any other entity whose property and interests in property are blocked.***) (emphasis added); *see also* January 2020 McBrien Declaration, Garnishment Action, D.E. 55-1 at ¶¶ 9-11 [attached hereto as **Exhibit I**].

The Honduran government's commencement of liquidation proceedings of Banco Continental and Bantrab's appointment as fiduciary liquidator occurred ***after*** OFAC designated Banco Continental and blocked ***all*** of the assets in the putative name of Banco Continental.  Under United States law, after OFAC blocked the assets in the putative name of Banco Continental, any attempt to transact such assets (e.g. Bantrab acquiring any form of interest under Honduran law) would be in violation of United States law and automatically null and void.  Importantly, this matter has been fully briefed is ripe for adjudication.

More recently, Bantrab has sought to intervene in the underlying Garnishment Action. D.E. 47, Garnishment Action [attached hereto as **Exhibit K**].    In its motion to intervene in the

---

[6] In its various filings in the Garnishment Action and the Interpleader Action, Bantrab has attached as exhibits four OFAC general licenses, all of which have expired. Bantrab nevertheless maintains that in February 2017, while the third OFAC general license extension remained in place, the Honduran Banking Commission transferred ownership of all of Banco Continental's assets to Bantrab.  Bantrab continues to maintain this untenable position in this bankruptcy action. *See* Motion for Recognition of Foreign Main Proceeding Pursuant to 11 U.S.C. § 1517 and Request for Hearing (the "Motion for Recognition"), D.E. 9 at ¶¶ 17-18.  As explained more fully in Caballero's briefs [*see e.g.* Opp. to Mot. to Intervene, Interpleader Action and Garnishment Action, respectively, D.E. 43 at 4-5, 9-19 (attached hereto as **Exhibit H**) and D.E. 55 (attached hereto as **Exhibit I**); Opp. to Status Conference, Interpleader Action, D.E. 64 at ¶¶ 6-10 (attached hereto as **Exhibit J**)], such legal conclusion is inapplicable to the South Dakota Blocked Funds because OFAC's general licenses cited by Bantrab explicitly did not authorize the unblocking of any property previously blocked by OFAC or any transactions relating to FARC's assets.

Garnishment Action, Bantrab largely relies on the erroneous arguments previously made in its motion to intervene in the Interpleader Action. Like the motion to intervene in the Interpleader Action, the motion to intervene in the Garnishment Action, and all other pending motions in both the Garnishment Action and the Interpleader Action (compositely, the "South Dakota Actions"), have been completed and are therefore ripe for adjudication.

On January 23, 2020, more than one year after Caballero initiated the garnishment action against the South Dakota Blocked Funds and following completion of briefing, Bantrab—on behalf of Banco Continental—filed a chapter 15 Petition for Recognition of a Foreign Proceeding (the "Petition") under Title 11 of the Bankruptcy Code in the Southern District of Florida. As its basis for venue, Bantrab, on behalf of Banco Continental, knowingly and erroneously alleges that "Debtor's principal place of business or principal assets in the United States are in this district."[7] *See* Petition, D.E. 1 at 3, question 12. In the Petition, Bantrab discloses that Banco Continental is a named party in the Interpleader Action (although it fails to mention that Banco Continental is also a named party in the Garnishment Action and the D.C. Action).[8] The Petition further states that:

> Banco de los Trabajadores, S.A., as government-appointed fiduciary liquidator of Banco Continental, seeks a stay of execution pursuant to 11 U.S.C. § 1519(a)(1) to prevent…[Caballero and the Stansell and Pescatore Judgment Creditors] from garnishing or attaching funds and/or assets located at Wells Fargo Bank, N.A., Eastern National Bank, US Century Bank, and/or BAC Florida Bank in accounts residing in the Southern District of Florida that were formerly owned and/or are in the name of by Banco Continental, S.A.

*Id.*, D.E. 1 at 75-76.

---

[7] The particulars of Bantrab's false allegations are discussed *infra*.

[8] The "D.C. Action" refers to the improper garnishment proceeding initiated by a group of competitor judgment creditors, collectively known as the "Stansell and Pescatore Judgment Creditors," to execute against the South Dakota Blocked Funds. *See Stansell, et al. v. Pineda, et al.,* Case No. 1:10-mc-00471-TJK (D.D.C. 2010).

What the Petition fails to mention, however, is that a chapter 15 bankruptcy action, wherever situated, could be inappropriately used to affect far more than the disposition of the assets in the putative name of Banco Continental allegedly located in this judicial district.  Indeed, such a bankruptcy action could be inappropriately used to affect the disposition of *any* U.S. asset in the putative name of Banco Continental, including the South Dakota Blocked Funds, which are already the subject of the South Dakota Actions.  And, even more problematic, is the fact that Bantrab has initiated this bankruptcy action relating to OFAC *blocked* U.S. assets when neither it nor Banco Continental have any legally cognizable interest in such *blocked* assets.

In truth, Bantrab's blatant forum shopping is clearly an attempt to have another court inappropriately stay nearly completed proceedings (which proceedings are dispositive of the issues raised by Bantrab here) or interfere in such proceedings by granting Bantrab automatic interpleader status pursuant to 11 U.S.C. § 1524.  Put another way, it is improper for Bantrab to attempt to move this Court to obtain a ruling regarding its status as a Honduran liquidator in order to circumvent the specific licenses it would require from OFAC to claim an interest in the blocked assets.  Bantrab should know that such legal maneuver would be of no avail under the "Look Back Rule" in established statutory authority and case law in any event. *See* 31 CFR § 536.402 (2019) (providing that: "Any amendment, modification, or revocation…of any…license issued by [OFAC] ***shall not***, unless otherwise specifically provided***, be deemed to affect…any civil or criminal suit or proceeding commenced or pending prior to such amendment, modification, or revocation***.") (emphasis added); *See also Stansell,* 771 F.3d 729, 732-33 (11th Cir. 2014) (interpreting 31 CFR § 536.402 and holding that claimants' OFAC de-listing, which actually purported to unblock ALL of claimants' assets and remove their designation sanctions, should not

operate retroactively to put their assets out of the plaintiffs' reach because the plaintiff had already initiated post-garnishment proceedings against claimants).

## LEGAL STANDARD

In a chapter 15 bankruptcy action, such as the one here, venue is proper "in the district court of the United States for the district in which the debtor has its principal place of business or principal assets in the United States."[9] 28 U.S.C. § 1410(1). 28 U.S.C. § 1412 provides that: "***A district court may transfer a case or proceeding under title 11 [11 USCS §§ 101 et seq.] to a district court for another district***, ***in the interest of justice*** or for the convenience of the parties."[10] *See also* Fed. R. Bankr. P 1014(a)(2) ("***If a petition is filed in an improper district, the court,*** on the timely motion of a party in interest or on its own motion, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, ***may*** dismiss the case or ***transfer it to any other district if the court determines that transfer is in the interest of justice*** or for the convenience of the parties.") (emphasis added). On motions to transfer venue, courts in this judicial district typically consider six factors,[11] as well as "all 'additional factors that

---

[9] Although 28 U.S.C. § 1410 provides for two other independent bases for venue in subsection (2) and (3), Bantrab's Response to question 12 of the petition - "Why is venue proper in *this district*?" - clearly evidences that Bantrab is traveling under subsection (1) of the venue statute. *See* Petition, D.E. 1 at 3 (responding that "Debtor's principal place of business or principal assets in the United States are in this district"). Caballero's analysis regarding venue is therefore based on Bantrab's selection.

[10] Given that 28 U.S.C. § 1412 contemplates any "case or proceeding under title 11," it is clear from the plain language of 28 U.S.C. § 1412 that chapter 15 bankruptcy actions like this one, which are creatures of title 11, may be transferred pursuant to this statue. *See In re Suntech Power Holdings Co.,* 520 B.R. 399, 421 (Bankr. S.D.N.Y. 2014) (concluding that chapter 15 cases may be transferred pursuant to 28 U.S.C. § 1412 and Fed. R. Bankr. P. 1014).

[11] These factors include:

> (1) Relative ease of access to sources of proof, including ease of travel for witnesses in terms of time and distance.
> (2) Availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining those witnesses' attendance.
> (3) Enforceability of a judgment if one is obtained.
> (4) Relative advantages and obstacles to fair trial, including the familiarity of transferee court with the facts of the case.

may be relevant to the convenience of the parties and the interest of justice.'" *Dilworth,* 598 B.R. at 906. "In applying these factors, the burden is on the moving party to show by a preponderance of the evidence that transfer is in the interest of justice and the convenience of the parties." *Id.* And, although "there is a presumption that venue is most proper in the court in which the bankruptcy case is pending," courts have determined that circumstances may nevertheless warrant transfer. *Id.* at 906; *see also Unico Holdings v. Nutramax Prods.,* 264 B.R. 779, 783 (Bankr. S.D. Fla. 2001).

Here, venue in the Southern District of Florida is improper[12] because neither the principal place of business nor the principal U.S. assets in the putative name of Banco Continental lie in this judicial district – let alone this state. Rather, the principal U.S. assets in the putative name of Banco Continental lie in South Dakota, where the dispositive South Dakota Actions are pending. *See* Wells Fargo's Opp. to the Stansell and Pescatore Defendants' Motion to Transfer Venue, Interpleader Action, D.E. 52 at 2 [attached hereto as **Exhibit L**] ("Here, ***the blocked funds [i.e. the South Dakota Blocked Funds] are situated in South Dakota*** and Antonio Caballero commenced his garnishment action here.") (emphasis added); *see also* Wells Fargo's Resp. to Garnishment Summons, *Caballero v. FARC, et al.,* No. 20-cv-00492, D.E. 2 at ¶ 11 (D. Minn.

---

(5) Local interest in having local controversies decided at home, taking into account where the acts giving rise to the causes of action at issue occurred.
(6) Conducting the trial in the state the law of which will govern the action.

*Dilworth v. Rohalmin (In re Rohalmin),* 598 B.R. 900, 906 (Bankr. S.D. Fla. 2019); *see also Unico Holdings v. Nutramax Prods.,* 264 B.R. 779, 783 (Bankr. S.D. Fla. 2001) (same); *Pan Am Corp. v. Pan Am World Airways, Inc.,* 177 B.R. 1014, 1018 (Bankr. S.D. Fla. 1995) (same).

[12] Even if the Court were to determine that venue is proper in the Southern District of Florida (and it is not for the reasons discussed *infra*), the Court should nevertheless transfer the bankruptcy action to the South Dakota District Court as it is in the "interest of justice." *See* Fed.R.Bank.P. 1014(a)(1) ("***If a petition is filed in the proper district,*** ***the court,*** on the timely motion of a party in interest or on its own motion, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, ***may transfer the case to any other district if the court determines that the transfer is in the interest of justice*** or for the convenience of the parties.") (emphasis added); 28 U.S.C. § 1412 (providing for transfer of venue, regardless of whether venue is proper, when transfer is in the interest of justice or for the convenience of the parties).

9

Feb. 11, 2020) [attached hereto as **Exhibit M**] (reaffirming that assets in the putative name of Banco Continental totaling $14,611,203 "***are located in South Dakota***") (emphasis added). Thus, the presumption in favor of the venue where the bankruptcy case is currently pending is inapplicable here.

But, even if the Court were to determine that venue is proper in the Southern District of Florida (and it is not), transfer to the District Court of South Dakota would still be warranted. As will be discussed in greater detail below, the fact that the legal issues in the South Dakota Actions will dispose of the issues raised by Bantrab here, and the fact that the South Dakota Actions were filed long before the bankruptcy proceeding, justifies transfer. Indeed, the evidence clearly indicates that Bantrab is merely forum shopping. Furthermore, the preponderance of the evidence demonstrates that transfer of this case to the district court of South Dakota is in the interest of justice. Thus, Caballero respectfully requests that this Court grant his Motion.

## ARGUMENT

## I.      THE SOUTHERN DISTRICT OF FLORIDA IS NOT A PROPER VENUE

Banco Continental does not have its principal place of business in this judicial district. Indeed, by Bantrab's own admission, "Banco Continental is a former Honduran commercial bank" with its principal place of business in Honduras. *See* Mot. for Recognition, D.E. 9 at 6 ("Prior to liquidation, the Debtor…[had] its headquarters and registered offices located at…Honduras."). Furthermore, the principal U.S. assets in the putative name of Banco Continental lie outside of this judicial district and indeed outside of the State of Florida. Thus, the Southern District of Florida is not a proper venue for this chapter 15 bankruptcy action. *See* 28 U.S.C. § 1410(1) ("A case under chapter 15 of title 11 may be commenced in the district court of the United States for the district in which the debtor has its principal place of business or principal assets in the United States.").

And, since venue is improper, "the only options for the Court are to transfer or dismiss the case." *See In re Newby,* No. 06-16964, Bankr. LEXIS 1675, at \*4 (Bankr. S.D. Fla. May 7, 2007).

Bantrab, on behalf of Banco Continental, falsely asserts that "the Debtor's principal assets in the United States are located within the Southern District of Florida." Mot. for Recognition, D.E. 9 at 14.  In its Motion for Recognition, Bantrab claims that "[b]ased on information and belief, the Debtor currently has over \$16.5 million in assets located in the United States (all in Miami and Coral Gables, Florida)." *Id.* at 13.  Shockingly, Bantrab lists as part of Debtor's assets located in Florida the very same blocked account that is the subject of the South Dakota Actions, valued at over \$13 million, despite being fully aware that Wells Fargo has already established such blocked account to be located in South Dakota. *Compare id.*, *with* Wells Fargo's Opp. to the Stansell and Pescatore Defendants' Motion to Transfer Venue, Interpleader Action, D.E. 52 at 2 [attached hereto as **Exhibit L**] ("Here, ***the blocked funds [i.e. the South Dakota Blocked Funds] are situated in South Dakota*** and Antonio Caballero commenced his garnishment action here.") (emphasis added).  Given that the blocked account, valued at over \$13 million, is located in South Dakota, and not the Southern District of Florida as Bantrab purports, the U.S. assets in the putative name of Banco Continental located in the Southern District of Florida total, at most, \$4 million, assuming Bantrab's allegations are true.

By contrast, U.S. assets in the putative name of Banco Continental located in the district of South Dakota total, at a minimum,[13] roughly \$15 million.  This includes the aforementioned blocked account, valued at over \$13 million, and several other accounts in the putative name of Banco Continental, which also lie in blocked Wells Fargo accounts in South Dakota.  Wells Fargo

---

[13] The assets in the putative name of Banco Continental currently known to Caballero are those held by Garnishee, Wells Fargo.  It is therefore possible that additional assets in the putative name of Banco Continental are located in South Dakota at other financial institutions.

identified these accounts to Caballero in discovery. They too are also the subject of the South Dakota Actions. Moreover, the amounts in blocked accounts in the putative name of Banco Continental produced in discovery to Caballero by Wells Fargo is largely consistent with Wells Fargo's Amended Disclosure Form, listing $14,611,203 as due and owing to Banco Continental in South Dakota. *See* Garnishment Action, D.E. 37-1 at line item 3 [attached hereto as **Exhibit N**]. And, just two days ago, Wells Fargo reaffirmed that the assets totaling $14,611,203 "***are located in South Dakota.***" *See* Wells Fargo's Resp. to Garnishment Summons, *Caballero v. FARC, et al.,* No. 20-cv-00492, D.E. 2 at ¶ 11 (D. Minn. Feb. 11, 2020) [attached hereto as **Exhibit M**] (emphasis added).[14]

Thus, because the evidence clearly indicates that principal U.S. assets in the putative name of Banco Continental lie outside of the Southern District of Florida, it follows that this judicial district is an improper venue for this bankruptcy action. *See In re Newby,* Bankr. LEXIS 1675, at *2-4 (concluding that debtor's principal assets did not lie in the judicial district where the bankruptcy action was brought and transferring the bankruptcy action to Hawaii after determining that the debtor's more valuable assets were located therein). Accordingly, Caballero respectfully requests that this Court transfer this bankruptcy action to the District Court of South Dakota— where the principal U.S. assets in the putative name of Banco Continental lie and where the dispositive South Dakota Actions have been ongoing for over a year. *Id.* at *4.

---

[14] Significantly, Bantrab appears to not have known about the assets located in South Dakota prior to Caballero's initiation of garnishment proceedings against same. Presumably, if Bantrab had any interest in such assets, as it purports, it would have informed Wells Fargo of its interests and sought an OFAC specific license for such blocked assets long beforehand. Instead, Bantrab took no action, further evidencing its lack of a legally cognizable interest in the U.S. blocked assets in the putative name of Banco Continental.

## II.    THE SOUTH DAKOTA ACTIONS WERE FILED LONG BEFORE THE BANKRUPTCY ACTION

Whether Bantrab (on behalf of Banco Continental) has the authority to initiate a bankruptcy proceeding, such as the one herein, relating to blocked assets located in the United States in the putative name of Banco Continental – be they in South Dakota or in Florida – is predicated on the outcome in the proceedings already fully briefed and currently under consideration by the Court in the South Dakota Actions.  Given the dispositive proceedings in the South Dakota Actions,[15] as well as the fact that the South Dakota Actions were filed first, there is a strong presumption that the South Dakota District Court is the proper forum to oversee this bankruptcy action.  This presumption is further strengthened because the overlapping legal issues have already been fully briefed in the South Dakota Actions and are ripe for adjudication.  Furthermore, because Bantrab (on behalf of Banco Continental) fails to establish "compelling circumstances" displacing the presumption in favor of the South Dakota District Court, Caballero respectfully requests that this Court transfer the bankruptcy proceeding thereto.

"[W]here two actions involving overlapping issues and parties are pending in two federal courts, *there is a strong presumption across federal circuits that favor the forum of the first-filed suit under the first-filed rule*." *Dilworth,* 598 B.R. at 904 (emphasis added).  In *Dilworth,* the Debtor, an owner of an auto detailing business, commenced a bankruptcy action in the Southern District of Florida. *Id.* at 903.  The Plaintiff/Trustee subsequently filed an adversary complaint therein, pursuing Fair Labor Standards Action ("FLSA") claims against a number of dealerships for their role in assisting the Debtor to keep the assets of Debtor's business out of reach of the Debtor's creditors and the Plaintiff/Trustee. *Id.*   The complaint specifically alleged that "'the

---

[15] Indeed, Bantrab admits the relatedness of these actions affecting assets in the putative name of Banco Continental. *See* Mot. for Recognition, D.E. 9 at 9-10.

exclusive purpose of the [Debtor's] auto detailing business [was] to circumvent employment and tax liability for the [Defendant Dealerships]' when, 'in economic reality,' the Defendant Dealerships had 'full operational and financial control over the auto detailing workplace' and were, in fact, 'joint employers under the FLSA.'" *Id.* at 904 (emphasis removed).   The dealership defendants subsequently filed a motion to transfer the FLSA claims against them in the bankruptcy action to the Virginia District Court on the basis that a prior-filed action involving FLSA claims against Debtor and Debtor's business was pending in the transferee district.

In determining whether to transfer the FLSA claims in the bankruptcy action to the Virginia District Court, the court considered the first-filed rule:

> "The first-filed rule holds that when parties have instituted competing or parallel litigation in separate courts, the court initially having jurisdiction should hear the case."

> "…Moreover, *the Eleventh Circuit requires that the party objecting to jurisdiction in the first-filed forum carry the burden of establishing "compelling circumstances" to warrant an exception to the first-filed rule.* "The primary purpose of the [first-filed] rule is to conserve judicial resources and avoid conflicting rulings."

*Id.* at 905 (internal citations omitted) (quoting *First Equitable Realty, III, Ltd. v. Dickson,* No. 13-20609-CIV-MORENO, U.S. Dist. LEXIS 145429, at *7 (S.D. Fla. Oct. 7, 2013) (emphasis added). The court agreed with the dealership defendants that the "cases significantly overlap[ped] and the forum of the first-filed suit is the proper forum to hear the[] [FLSA] claims." *Id.*  More specifically, the court determined that "the Trustee…failed to carry the burden of proving [the Southern District] should decide Counts III and IV of the [Florida] Complaint involving FLSA claims" given that that the "joint employer type claims raised in the [Florida] Complaint can be, or may already have been [] raised in the in the Virginia Federal Action." *Id.*  The court further concluded that the interest of justice factors weighed in favor of transfer. *Id.* at 906-07.  As a result, the Court ordered

the FLSA claims filed against the dealership defendants in the bankruptcy action transferred to the Virginia District Court. *Id.* at 907.

As in *Dilworth,* the parties herein have initiated "parallel litigation in separate courts" that "involve[e] overlapping issues and parties." *Id.* 905. Whether Bantrab (on behalf of Banco Continental) has the authority to initiate a bankruptcy proceeding, such as the one herein, relating to blocked assets located in the United States in the putative name of Banco Continental – be they in South Dakota or in Florida – is a legal issue that substantially overlaps with legal issues already fully briefed and currently under consideration by the Court in the South Dakota Actions. In the South Dakota Actions, the Court must first decide whether Bantrab and Banco Continental have a legally cognizable interest in the South Dakota Blocked Funds in order to determine whether Caballero is entitled to execute against the South Dakota Blocked Funds (they do not). The Court's conclusion in the South Dakota Actions as to whether Bantrab and Banco Continental have a legally cognizable interest in the South Dakota Blocked Funds will necessarily also dispose of whether the Bantrab and Banco Continental have a legally cognizable interest in *any* blocked assets located in the United States in the putative name of Banco Continental. Thus, if the Court in the South Dakota Actions were to conclude that neither Bantrab nor Banco Continental have a legally cognizable interest in the South Dakota Blocked Funds (or any other blocked asset located in the United States), then it would follow that Bantrab lacks the authority to bring a bankruptcy proceeding on behalf of Banco Continental relating to blocked assets here or elsewhere in the United States in the putative name of Banco Continental, such as the bankruptcy action *sub judice*.

Given that the legal issues in the South Dakota Actions will dispose of the issues raised by Bantrab here, the first-filed rule is applicable as was the case in *Dilworth.* Pursuant to the first-filed rule, "the court initially having jurisdiction should hear the case." *Id.* at 905. Because the

South Dakota Actions were filed long before this bankruptcy proceeding,[16] "there is a strong presumption" that District Court of South Dakota, as the first-filed forum, should hear this bankruptcy case. And, because the Petition establishes no "compelling circumstances to warrant an exception to the first-filed rule," Bantrab (on behalf of Banco Continental) fails to satisfy its evidentiary burden of displacing the strong presumption in favor of the South Dakota District Court overseeing the bankruptcy proceeding. Moreover, as will be discussed in greater detail *infra,* the interest of justice factors weigh in favor of transfer as in *Dilworth.* Thus, the Court herein should rule in the same manner as the *Dilworth* court and transfer this bankruptcy proceeding to the first-filed forum (*i.e.* the District of South Dakota).

## III.    BANTRAB IS FORUM SHOPPING

This bankruptcy action is nothing more than a thinly veiled attempt to circumvent the South Dakota District Court through forum shopping. Bantrab is not a party to the South Dakota Actions.[17] Rather, Bantrab has sought to intervene in both actions based on its purported interest in Banco Continental. As previously mentioned, Caballero opposes both motions because Bantrab does not and cannot have a legally cognizable interest in the South Dakota Blocked Funds (or any other asset in the putative name of Banco Continental located in the United States). Briefing on these motions to intervene is complete and ripe for adjudication. Fearing it will be denied intervention (as it should), Bantrab has attempted to back-door the South Dakota Actions by forum shopping and filing this bankruptcy action on behalf of Banco Continental, which would affect the

---

[16] Again, Caballero served his writ of garnishment upon Wells Fargo over a year ago, on December 21, 2018. *See* Admission of Service, Garnishment Action, D.E. 1-5 [attached hereto as **Exhibit G**]. The Interpleader Action was filed nearly half a year ago. *See* Interpleader Complaint, Interpleader Action, D.E. 1 [attached hereto as **Exhibit O**].

[17] Banco Continental is a party to the South Dakota Actions.

disposition of all the assets in the putative name of Banco Continental located in the United States, including the South Dakota Blocked Funds.

Significantly though, in filing this Petition, Bantrab is not merely (and inappropriately) seeking a more favorable venue, but quite literally back-dooring the South Dakota Actions and forcing intervention.  Rather than accept the forthcoming determinations of the South Dakota District Court, Bantrab attempts to create leverage upon that court by seeking broad pronouncements from this Court. *See* 11 U.S.C. § 1524 ("Upon recognition of a foreign proceeding, the foreign representative may intervene in any proceedings in a State or Federal court in the United States in which the debtor is a party.").  Thus, Bantrab would circumvent any unfavorable ruling by the South Dakota District Court regarding its motions to intervene.

The Eleventh Circuit Court of Appeals (the "Eleventh Circuit") does not tolerate forum-shopping and has even sanctioned a debtor's representative who does precisely this and files a bankruptcy petition in bad faith. *See Zelster v. Little Rest Twelve, Inc. (In re Little Rest Twelve, Inc.),* 662 Fed. Appx. 887 (11th Cir. 2016), *cert. denied by* No. 16-1086, U.S. Dist. LEXIS 2529 (Apr. 17, 2017).  In *In re Little Rest Twelve, Inc.,* Emmanuel Zelster and counsel disputed who was authorized to represent the debtor, Little Rest Twelve, Inc. ("Little Rest"). *Id.* at 888.  Their dispute stemmed from a larger conflict over Little Rest's ownership. *Id.*  Significantly, the ownership issue was already before a U.S. Bankruptcy Court for the Southern District of Florida (the "Florida bankruptcy court") in a chapter 11 proceeding when Zelster filed another bankruptcy action in the U.S. Bankruptcy Court for the Southern District of New York (the "New York bankruptcy court") under chapter 7 on behalf of Little Rest. *Id.*  The New York bankruptcy court subsequently granted counsel's motion to transfer the New York bankruptcy action to the Florida bankruptcy court. *Id.*

17

Following transfer, the Florida bankruptcy court dismissed the chapter 7 bankruptcy action and imposed sanctions on Zelster for a bad faith filing of a bankruptcy petition. *Id.* The Florida bankruptcy court determined that Zelster's filing of the New York bankruptcy action was improper given that the Florida bankruptcy court was already deciding the ownership issue. *Id.* The Florida bankruptcy court further concluded that Zelster's actions were improper because the Florida bankruptcy action had already "cast doubt on his authority to file for Chapter 7 for Little Rest." *Id.* As a result, the Florida bankruptcy action sanctioned Zelster in the amount of $100,586 for his "frivolous filing." *Id.* On appeal, the Eleventh Circuit affirmed, concluding that the Florida bankruptcy action "supported its finding with evidence of Zelster's delay, forum shopping, and knowledge that his authority to file actions for Little Rest was in question." *Id.* at 889.

As in Zelster, Bantrab filed this bankruptcy action knowing full well that two dispositive actions (*i.e.* the South Dakota Actions) were pending and near completion in the South Dakota District Court. Moreover, like Zelster, Bantrab knew that its authority to file a bankruptcy action on behalf of Banco Continental was in question by virtue of the fact that its motions to intervene in the South Dakota Actions, which are based on its falsely alleged interests in assets in the putative name of Banco Continental, including the South Dakota Blocked Funds, were opposed by Caballero. Furthermore, like Zelster, Bantrab forum-shopped and filed a duplicative litigation "for the improper purpose of delaying [] imminent adverse ruling[s] on ownership and control" of Banco Continental in the dispositive South Dakota Actions. Such striking parallelisms between the two cases mandate a similar result—transfer of the improper bankruptcy action to the first-filed forum (*i.e.* the South Dakota District Court).

Bantrab's untoward legal maneuver to have its claims heard in a venue it perceives as more favorable by taking advantage of the fact that the Southern District of Florida has not had the same

amount of time and opportunity to familiarize itself in the complexities of this matter should not

be rewarded. Similarly, Bantrab should not be allowed to usurp the South Dakota District Court's

authority to decide whether to allow it to intervene in the South Dakota Actions by forum shopping

and belatedly filing a chapter 15 petition.

## IV.    TRANSFER OF THE BANKRUPTCY ACTION TO SOUTH DAKOTA IS IN THE INTEREST OF JUSTICE

The interest of justice factors weigh heavily in favor of transfer to the South Dakota District

Court. Accordingly, Caballero respectfully requests that his Motion be granted.

1.    <u>Relative ease of access to sources of proof, including ease of travel for witnesses in terms of time and distance.</u>

Preliminary, it is worth noting that neither the Debtor, Banco Continental, nor its fiduciary

liquidator, Bantrab, reside in Florida. Instead, both entities reside (or resided) in Honduras.

Moreover, the interested parties in this action either do not reside in Florida or have chosen to

proceed against Banco Continental in a different judicial district. For instance, none of the

Pescatore Judgment Creditors reside in Florida and the Stansell Judgment Creditors are

interspersed across multiple states.[18] And, although Caballero resides in Florida, it is significant

that neither Caballero nor the Stansell and Pescatore Judgment Creditors have initiated a

garnishment proceeding against Banco Continental in this State. Instead, Caballero initiated

garnishment proceedings in South Dakota, where the bulk of U.S. assets in the putative name of

Banco Continental lie. And, the Stansell and Pescatore Judgment Creditors initiated garnishment

proceedings in the District of Columbia. Thus, any weight given to the fact that some of the

---

[18] *See* Interpleader Action, First Amended Complaint, D.E. 6, at ¶¶ 14-15 [attached hereto as **Exhibit P**] (alleging that the Stansell Defendants are "citizens of the states of Florida, Connecticut, Alabama, New York, and Virginia" and that the Pescatore Defendants are "citizens of the states of Alabama and New Jersey").

judgment creditors reside in Florida is negated by the fact that these very same judgment creditors have voluntarily chosen jurisdictions outside of Florida to proceed against Banco Continental.

Furthermore, the location of the sources of proof further weigh in favor of transfer. Indeed, the principal U.S. assets in the putative name of Banco Continental lie in South Dakota. *See In re Newby,* No. 06-16964, Bankr. LEXIS 1675, at *2-4 (Bankr. S.D. Fla. May 7, 2007) (concluding that debtor's principal assets did not lie in the judicial district where the bankruptcy action was brought and transferring the bankruptcy action to Hawaii after determining that the debtor's more valuable assets were located therein); *see also Dilworth,* 598 B.R. at 905 (considering the location of the relevant assets in its decision on a motion to transfer). Moreover, one would surmise that if there were to be any bank witnesses, such witnesses would also be located in South Dakota.

And, because the relevant documents and sources, which have already been submitted in the South Dakota Actions, are located in South Dakota, to move them would be unduly burdensome and a waste of judicial resources. *See Unico Holdings,* 264 B.R. at 784 ("A significant amount of discovery has already occurred in Florida, as the state court case had been pending for nearly four years. To move all of the evidence that has been collected in this case to Delaware, and to require all of the Plaintiff's witnesses to travel to Delaware, would obviously be inconvenient and burdensome to the Plaintiff."). Thus, the interest of justice factor relating to location of interested parties, witnesses, and sources of proof weighs against maintaining this action in this judicial district.

          2.    <u>Availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining those witnesses' attendance.</u>

To the extent compulsory process is necessary, the South Dakota District Court can provide such process. Moreover, given the venue of the South Dakota Actions and the fact that the principal U.S. assets in the putative name of Banco Continental lie in South Dakota, it is likely that

any non-party witness (e.g. bank witnesses) in the bankruptcy action would also be located in South Dakota. *See Unico Holdings,* 264 B.R. at 784 (concluding that the availability of compulsory process factor weighed in favor of the venue where "non-party witnesses would most likely be located"). Thus, the second factor – the availability of compulsory process – weighs in favor of transfer.

3.    <u>Enforceability of a judgment if one is obtained.</u>

Although both the Southern District of Florida and the District of South Dakota would be able to enforce a judgment in this bankruptcy action, it is worth noting that only the South Dakota District Court can enforce a judgment in the Garnishment Action. The South Dakota Blocked Funds are located in South Dakota and, therefore, Eighth Circuit law regarding garnishment of *res* in-situ as relating to jurisdiction over the assets and garnishment procedures apply. The law is no different in Florida. *See Skulas v. Loiselle,* No. 09-60096, 2010 U.S. Dist. LEXIS 54162, at *6-7 (S.D. Fla. Feb. 20, 2009) ("The undersigned…finds that because the bank account at issue is located in Pennsylvania, the Court does not have jurisdiction over it and the instant Writ of Garnishment…should be dissolved."); *Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, No. 8:09-cv-02308-CEH-AAS (M.D. Fla. July 22, 2015) Order, Garnishment Action, D.E. 32-1 [attached hereto as **Exhibit Q**] ("All of the funds at issue in the motions, memoranda, and writs now before the Court are held outside the State of Florida and, thus, are beyond the reach of a Florida writ of garnishment."). Thus, to the extent this Court agrees with Caballero that the South Dakota Actions and this bankruptcy action sufficiently overlap such that the three actions should be heard in the same judicial district, the actions would need to be heard by the South Dakota District Court. As such, the third factor— enforceability of the judgment—weighs in favor of transfer, or at the very least, is neutral.

21

4.  <u>Relative advantages and obstacles to fair trial, including the familiarity of
transferee court with the facts of the case.</u>

The fourth factor—the transferee court's familiarity with the case—weighs heavily in favor of transfer. *Dilworth,* 598 B.R. at 906.  Like the Virginia District Court in *Dilworth,* the South Dakota District Court "has substantial experience and expertise with the complexities" of Bantrab's claims to assets in the putative name of Banco Continental located in the United States. *Id.; compare with Pan Am Corp.,* 177 B.R. at 1019 (noting that the familiarity of the transferee court with the bankruptcy case is immaterial because it concerns "nothing more than a matter of mundane accounting").  And, like the Virginia District Court in *Dilworth*, the South Dakota District Court is already presiding over proceedings that would be dispositive (i.e. the South Dakota Actions). *Dilworth,* 598 B.R. at 906.  Thus, the South Dakota District Court can provide the interested parties an expedited garnishment process "due to its familiarity with the circumstances" surrounding the debtor, Banco Continental, and its illicit activities." *Id.*

5.  <u>Local interest in having local controversies decided at home, taking into
account where the acts giving rise to the causes of action at issue occurred.</u>

The fifth factor also weighs in favor of transfer.  As previously discussed, the legal issues in the South Dakota Actions are dispositive of the issue raised by Bantrab here.  Whether Bantrab, the fiduciary liquidator bringing this bankruptcy action on behalf of Banco Continental, has any interest in assets in the putative name of Banco Continental located in the United States is a question that is directly before the South Dakota District Court.  The South Dakota District Court's interest in this bankruptcy action relating to the disposition of assets in the putative name of Banco Continental is further rooted in the fact that the South Dakota Blocked Funds, also in the putative name of Banco Continental, are located in South Dakota.  Moreover, Caballero's domestication of his underlying Final Judgment, ensuing Summons for Garnishment against the fruits of Banco

Continental's wrongdoing, and service of the Summons for Garnishment, were obtained in South Dakota. *See* Not. of Filing Foreign Judgment, Summons for Garnishment, and Admission of Service, Garnishment Action, D.E. 1-1, 1-4, and D.E. 1-5, respectively [attached hereto as **Exhibit G**]; *see also Unico Holdings,* 264 B.R. at 784 ("The State of Florida is the jurisdiction which has the greatest interest in the outcome of the litigation, because the cause of action allegedly arose in Florida").

      6.  <u>Conducting the trial in the state the law of which will govern the action.</u>

The bankruptcy action herein does not require application of specific state law.  But, to the extent this Court agrees with Caballero that the South Dakota Actions and this bankruptcy action sufficiently overlap such that the three actions should be heard in the same judicial district, it is important to note that South Dakota state garnishment law will apply.  As previously mentioned, the South Dakota Blocked Funds are located in South Dakota and, therefore, Eighth Circuit law regarding garnishment of *res* in-situs as relating to jurisdiction over the assets and garnishment procedures apply.  Thus, "[t]o the extent there is a need to apply state law to the claims of the case," the South Dakota District Court is well-equipped to do so and, indeed, has already done so in its oversight of the South Dakota Actions. *See Dilworth,* 598 B.R. at 907; *see also Unico Holdings,* 264 B.R. at 779 ("Obviously, Florida state courts are more familiar with Florida law than a court in Delaware would be.").  As such, the sixth factor—application of state law—weighs in favor of transfer.

      7.  <u>Other factors</u>

"This Court must also consider which venue would promote the most economic and efficient administration of the bankruptcy estate, taking into account judicial economy; timeliness;

and fairness." *See Unico Holdings,* 264 B.R. at 784.  Upon consideration, it is clear that judicial economy weighs in favor of transfer.

The legal issues and pertinent facts in the South Dakota Actions are dispositive of the issues raised by Bantrab here. *See Dilworth,* 598 B.R. at 907 ("It would serve judicial economy to allow one court to preside over all the claims relating to a common nucleus of operative facts and circumstances.").   And, whereas the South Dakota District Court has had two related (and dispositive) cases and over a year to familiarize itself with the particulars of the legal issues and facts, this Court has not even had one month. *Id.* ("another case…already exists"); s*ee also Unico Holdings,* 264 B.R. at 784 ("This case been pending for almost four years…The state court has overseen this case since its inception…The court in Delaware, completely unfamiliar with this case, would not be in a position to try this case as quickly as a court with prior knowledge and experience with this particular controversy.").  Indeed, briefing is complete in the South Dakota Actions and the legal issues are ripe for adjudication. *Id.* (concluding that transferring the action would not serve judicial economy because the action was "almost ready to proceed to trial").

To not transfer this bankruptcy action to the South Dakota District Court may result in: (i) inconsistent rulings resulting in the South Dakota Blocked Funds being disposed of in a manner contrary to the South Dakota District Court's orders; (ii) delay in the outcome of the South Dakota Actions and the bankruptcy action while this Court is brought up to speed; and, (ii) expenditure of more money in court costs, attorney's fees, and costs of moving evidence. *Id.* Thus, to not transfer this bankruptcy action, "would not promote the most economic or efficient administration of the bankruptcy estate, but instead hinder it." *Id.*; *see also In re Newby*, 2007 Bankr. LEXIS 1675, at *3 (transferring bankruptcy action to Hawaii, where "four lawsuits the Debtor listed in his Statement of Financial Affairs are all pending").

V.    **THE PREPONDERANCE OF THE EVIDENCE SUPPORTS TRANSFER**

The Court should transfer this bankruptcy action to the South Dakota District Court because this judicial district is an improper venue.  However, even if the Court were to determine that this judicial district is a proper venue for the bankruptcy action, the Court should still transfer this action because Bantrab cannot displace the presumption in favor of the South Dakota District Court under the first-filed rule and because Bantrab is forum shopping.  Moreover, Caballero has proven that the preponderance of the evidence demonstrates that transfer serves the interests of justice.

Bantrab's own admissions in its Motion for Recognition regarding U.S. assets in the putative name of Banco Continental located in the Southern District of Florida, in conjunction with Wells Fargo's admissions in discovery and in Interpleader Action filings concerning U.S. assets in the putative name of Banco Continental located in South Dakota, evidence that the principal U.S. assets in the putative name of Banco Continental lie in South Dakota.  Moreover, the specific citations to a plethora of completed briefs and sources of proof already filed in the two long-standing South Dakota Actions, further demonstrate that: i) the issues before the South Dakota District Court are dispositive of the issues raised by Bantrab here; ii) that the South Dakota District Court is familiar with the relevant legal issues and poised to rule regarding same; and, iii) that judicial economy favors the South Dakota District Court as the proper venue.  Furthermore, the evidence establishing that the South Dakota Blocked Funds lie in South Dakota also supports a finding that the South Dakota District Court has a local interest in the South Dakota Actions, as well as this bankruptcy action.  Finally, Caballero has demonstrated that because these actions implicate the turnover of blocked funds, South Dakota garnishment law will apply.  Thus, Caballero overwhelmingly satisfies his burden.

25

**CONCLUSION**

For the reasons set forth herein, Caballero respectfully requests that this Court grant his

Motion and transfer this bankruptcy action to the South Dakota District Court.

DATED: February 14, 2020.

Respectfully submitted,

**ZUMPANO PATRICIOS, P.A.**
312 Minorca Avenue
Coral Gables, Florida 33134
Telephone: (305) 444-5565

By: */s/ Leon N. Patricios*
    Leon N. Patricios
    Florida Bar No. 12777
    lpatricios@zplaw.com
    Joseph I. Zumpano
    Florida Bar No. 56091
    jzumpano@zplaw.com
    Gabriela Rosell
    Florida Bar No. 0111735
    grosell@zplaw.com
    Danit Ashkenazi Darmon
    Florida Bar No. 1003836
    ddarmon@zplaw.com

*Counsel for Interested Party,*
*Antonio Caballero*

**<u>CERTIFICATION OF ATTORNEY</u>**

I hereby certify that I am admitted to the Bar of the United States District Court for the
Southern District of Florida and I am in compliance with the additional qualifications to practice
in this court set forth in Local Rule 2090-1(A).

*/s/ Leon N. Patricios*
Leon N. Patricios